IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**GENESIS AIR, LLC, and**
**WILBUR O. COLOM**                                                                                       **PLAINTIFFS**

**V.**                                                                                **CAUSE NO. 1:09-CV-308-SA-DAS**

**UNITED STATES OF AMERICA,**
**NELSON SMITH, and HICKS & SMITH, PLLC**                                       **DEFENDANTS**

## MEMORANDUM OPINION

Wilbur Colom and Genesis Air, LLC, (collectively Colom)[1] brought this action to, inter alia, quiet title to certain real property located at 806 Highway 45 North in Columbus, Mississippi. Presently before the Court is a Motion for Summary Judgment [77] filed by Defendant United States of America; a Motion for Partial Summary Judgment [82] filed by Defendants Nelson Smith and Hicks & Smith, PLLC; and a Motion for Summary Judgment [85] filed by Plaintiff Colom. All parties seek a determination of the validity of certain federal tax liens encumbering the property. The Court finds as follows:

## BACKGROUND

In October of 2000, Maurice Webber, the original owner of the property at issue, granted a deed of trust to the property to Golden Triangle Planning and Development District ("GTPDD") in the amount of $137,500.00. On January 25, 2001, Webber executed a promissory note to Union Planters Bank in the amount of $350,106.50, payment of which was secured by a second deed of trust to the property. Webber fell behind on his federal taxes, and the Internal Revenue Services (IRS) filed notices of federal tax liens against Webber and his property on August 2, 2001, and

---

[1] Genesis Air, LLC is a single member limited liability company wholly owned by Wilbur Colom. Colom transferred title to the property at issue in this suit to Genesis Air after purchasing it at the foreclosure sale.

January 31, 2003. On March 24, 2005, Union Planters assigned its deed of trust, along with the associated indebtedness, to Colom in exchange for a promissory note in the amount of $296,750.00.

Shortly after the Union Planter's deed of trust was assigned to Colom, Webber defaulted on both of the notes. GTPDD foreclosed on its note and appointed Nelson Smith as substitute trustee to sell the property at a non-judicial foreclosure sale. The foreclosure sale was to occur on December 12, 2008. In an attempt to comply with certain statutory requirements particular to federal tax liens (which will be discussed in greater detail below), Smith sent notice of the non-judicial foreclosure sale via Federal Express to an IRS office located at 600 South Maestri Street, Stop 31, New Orleans, Louisiana, 70130, on November 14, 2008. On November 17, Jamie Bishop, Smith's assistant, received an email notice from Federal Express that delivery of the package had failed due to an "incorrect address." Bishop informed Smith of the email, and he directed her to contact the IRS.

Bishop alleges that she spoke with an IRS agent named Lauren Capp. After explaining the situation to Capp, Bishop avers in her affidavit that:

> The IRS agent, Lauren Capp, informed me that the first address was not the proper address to send the notice. She provided me with a different address to resend the notice. The address she provided was "Internal Revenue Center, 3651 South Interregional, Hwy 35, Austin TX 78741." [Capp] told me to FedEx overnight the notice to insure a timely delivery. She represented to me that if the notice was received at the address she provided me by November 18, 2008, notice would be timely.

Bishop sent the notice to the address given to her by Capp addressed to "Chief, Special Procedures Staff." The letter was received on November 18, 2008, and signed for by an "R. Roach." However, as Smith would later learn, the Texas address was also an incorrect address for the notice. Also on November 18, Federal Express notified Bishop that it had delivered the notice to the Maestri Street address. The package was signed for by "S. Douds."

On December 12, 2008, Smith offered the property for sale, and Colom purchased the property for $83,151.13. On December 17, 2008, Smith sent a "Report of Sale" and a "Release of Right to Redeem Property" to 1555 Poydras Street, Suite 220, Stop 65, New Orleans, Louisiana 70112. This is the correct address to send communications to the IRS concerning non-judicial foreclosure sales in Mississippi.

To date, the IRS has refused to release its liens on the property, alleging that Smith failed to provide the statutorily-required notice to extinguish the liens. Colom commenced this action seeking a declaratory judgment regarding the validity of the tax liens, as well as damages against Smith and his law firm, Hicks & Smith PLLC (collectively "Smith"). The parties' cross-motions for summary judgment currently before the Court involve two substantive issues: (1) whether the tax liens continue to encumber the property (with the United States seeking judgment as a matter of law that the liens continue to encumber the land, and Colom and Smith seeking judgment as a matter of law that the liens were extinguished by the foreclosure sale), and (2) whether judgment as a matter of law is appropriate as to the amount of Colom's security interest in the property.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

## DISCUSSION

### I. Validity of the Tax Liens

The United States contends that its tax liens continue to encumber the property because Smith did not give proper notice to the United States in accordance with the applicable treasury regulations. Smith argues that the notice, even if technically deficient, was still effective because the United States did not object to the notice. Alternatively, Smith argues that the United States should be estopped from claiming that the notice was insufficient because of the representations of its agent. Colom, understandably cautious about staking out a position regarding the validity of the notice due to his other pending claims against Hicks, simply "moves this Court to enter an order declaring that the United States no longer has any valid tax liens against the subject property."

4

A.       Was Proper Notice Given?

At least twenty-five days in advance of a non-judicial foreclosure sale of property on which the United States has or claims a lien, written notice must be given to the IRS. 26 U.S.C. § 7425(b), (c). If proper notice is not given, any such sale is made subject to and without disturbing the United States' tax liens. 26 U.S.C. § 7425(b)(1). In other words, "if the proper type of notice required by federal statute is not afforded where so required, the federal tax lien then remains unaffected by the foreclosure process and will follow the property into the hands of the subsequent purchaser . . . ." Myers v. United States, 647 F.2d 591, 596 (5th Cir. 1981). Notice of a sale under Section 7425(b) "shall be given (in accordance with regulations prescribed by the Secretary) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary." 26 U.S.C. § 7425(c)(1).

> The applicable treasury regulations provide as follows:
>
> [N]otice . . . of a nonjudicial sale shall be given, in writing by registered or certified mail or by personal service, not less than 25 days prior to the date of the sale . . . to the Internal Revenue Service (IRS) official, office and address specified in IRS Publication 786, "Instructions for Preparing a Notice of Nonjudicial Sale of Property and Application for Consent to Sale," or any successor publication. . . . **Under this section, a notice of sale is not effective if it is given to an office other than the office listed in the relevant publication.**

26 C.F.R. § 301.7425-3(a)(1) (Effective July 8, 2008) (emphasis added). IRS Publication 786 provides that notices of non-judicial sales must be submitted to the "Technical Services Advisory Group Manager for the area in which the Notice of Federal Tax Lien was filed," and further directs attention to IRS Publication 4235 to find the particular address to which the notice must be sent. IRS Pub. 786 (Rev. 1-2006). Publication 4235 provides that, for notices of federal tax liens filed in Mississippi, the particular address to which a notice of a non-judicial foreclosure sale must be

5

directed is "1555 Poydras Street, Suite 220 - Stop 65, New Orleans, Louisiana 70112-3747." IRS Pub. 4235 (Rev. 1-2006).

The regulations further provide:

(d) Content of notice of sale--
(1) In general. With respect to a notice of sale described in paragraph (a) or (c) of this section, the notice will be considered adequate if it contains the information described in paragraph (d)(1)(i), (ii), (iii), and (iv) of this section.

>(i) The name and address of the person submitting the notice of sale;
>
>(ii) A copy of each notice of Federal Tax Lien (Form 668) affecting the property to be sold, or the following information as shown on each such Notice of Federal Tax Lien--
>
>>(A) The IRS office named thereon,
>>
>>(B) The name and address of the taxpayer, and
>>
>>(C) The date and place of filing of the notice;
>
>(iii) With respect to the property to be sold, the following information--
>
>>(A) A detailed description, including location, of the property affected by the notice (in the case of real property, the street address, city, and State and the legal description contained in the title or deed to the property and, if available, a copy of the abstract of title),
>>
>>(B) The date, time, place, and terms of the proposed sale of the property, and
>>
>>(C) In the case of a sale of perishable property described in paragraph (c) of this section, a statement of the reasons why the property is believed to be perishable; and
>
>(iv) The approximate amount of the principal obligation, including interest, secured by the lien sought to be enforced and a description of the other expenses (such as legal expenses, selling costs, etc.) which may be charged against the sale proceeds.

(2) Inadequate notice. Except as otherwise provided in this paragraph, a notice of sale

described in paragraph (a) of this section that does not contain the information described in paragraph (d)(1) of this section shall be considered inadequate by the IRS. If the IRS determines that the notice is inadequate, the IRS will give written notification of the items of information which are inadequate to the person who submitted the notice. A notice of sale that does not contain the name and address of the person submitting such notice shall be considered to be inadequate for all purposes without notification of any specific inadequacy. In any case where a notice of sale does not contain the information required under paragraph (d)(1)(ii) of this section with respect to a Notice of Federal Tax Lien, the IRS may give written notification of such omission without specification of any other inadequacy and such notice of sale shall be considered inadequate for all purposes. In the event the IRS gives notification that the notice of sale is inadequate, a notice complying with the provisions of this section (including the requirement that the notice be given not less than 25 days prior to the sale in the case of a notice described in paragraph (a) of this section) must be given. However, in accordance with the provisions of paragraph (b)(1) of this section, in such a case the IRS may, in its discretion, consent to the sale of the property free of the lien or title of the United States even though notice of the sale is given less than 25 days prior to the sale. In any case where the person who submitted a timely notice, which indicates his name and address, does not receive more than 5 days prior to the date of sale written notification from the IRS that the notice is inadequate, the notice shall be considered adequate for purposes of this section.

26 C.F.R. § 301.7425-3(d) (Effective July 8, 2008)

The United States contends that the notice was deficient in two ways: (1) both of the notices were sent to incorrect addresses, rather than the correct Poydras Street address in New Orleans, and (2) the notices were sent by Federal Express rather than by registered mail, certified mail, or hand delivery as provided for by statute and the regulations.

Smith, relying on § 301.7425-3(d)(2), argues that, because the IRS failed to give written notification more than five days prior to the date of the sale that the notice of sale was inadequate, the notice should be deemed adequate. However, this argument fails because the duty to notify a seller of an inadequate notice of sale articulated in subsection d(2) is premised on the IRS receiving a notice that is "inadequate" because "it does not contain the information described in paragraph

7

(d)(1)." Id. As the United States points out, none of the deficiencies listed in paragraph (d)(1) are at issue in this case. The notice in this case was flawed because it was sent to the wrong office and by an improper method of delivery. Section 301.7425-3(a)(1) flatly provides that, "a notice of a sale is not effective if it is given to an office other than the office listed in the relevant publication." The regulations make a distinction between an "inadequate" notice and an "ineffective" notice.[2] Therefore, § 301.7425-3(d)(2) is inapplicable.

There is no dispute that notice was not provided to the correct Poydras Street address listed in the relevant IRS publication. Furthermore, an improper method of delivery was utilized. The Court must conclude, applying the unambiguous language of §301.7425-3(a)(1), that the notice of the nonjudicial foreclosure provided by Smith was ineffective, and therefore, under §7425(b), the sale was made subject to and without disturbing the United States' tax liens.

B. Estoppel

Smith next argues that the United States should be estopped from asserting that notice was improper because he sent the second letter to the incorrect Texas address in reliance on the erroneous advice of IRS Agent Capp. "Equitable estoppel is a doctrine that is rarely valid against the government" and is applied to the federal government "in only the narrowest of circumstances." United States v. Bloom, 112 F.3d 200, 205 (5th Cir. 1997) (citations omitted). Courts should be especially reluctant to estop the government on the basis of oral statements. United States v. Marine Shale Processors, 81 F.3d 1329, 1351 (5th Cir. 1996) (citing Heckler v. Community Health Servs., 467 U.S. 51, 65, 104 S. Ct. 2218, 81 L. Ed. 2d 42 (1984)).

---

[2]Neither Glasgow Realty, LLC v. Withington, 345 F. Supp. 2d 1025 (E.D. Mo. 2004), nor Edmundson v. United States, 886 F. Supp. 1314 (W.D. La. 1995), cited by Smith, address a notice that is "ineffective" under § 301.7425-3(a)(1).

To establish estoppel against the government, a party must prove "affirmative misconduct" by the government as well as the four traditional elements of the doctrine, which are: "(1) that the party to be estopped was aware of the facts, and (2) intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury." Bloom, 112 F.3d at 205.

Smith's equitable estoppel argument fails for several reasons. First, Smith has failed to make a showing of affirmative misconduct on the part of the government. To constitute affirmative misconduct, at minimum, "the official must intentionally or recklessly mislead the estoppel claimaint." Marine Shale, 81 F.3d at 1350.[3] Affirmative misconduct is more than negligent conduct, and "[t]he erroneous advice of a government agent does not reach the level of affirmative misconduct." Id. (quoting F.D.I.C. v. Hulsey, 22 F.3d 1472, 1490 (10th Cir. 1994)).

Here, Smith has failed to present any evidence of affirmative misconduct on the part of the United States. Smith has at most set out facts that an IRS agent made a negligent representation concerning the proper address to send the notice. See Marine Shale, 81 F.3d at 1351 (finding no affirmative misconduct where written letter from environmental agency contained erroneous information regarding status of a facility; no evidence that the agency's "representations regarding interim status was the result of anything other than a negligent interpretation of section 6925(e)").

Additionally, Smith has failed to produce any evidence that his reliance on the alleged

---

[3]However, even intentional deception may not be enough to establish afirmative misconduct, as the Fifth Circuit later stated in Shale: "We reserve two issues for another day. First, we do not decide whether a showing of intent to mislead is sufficient in itself to discharge an estoppel claimant's burden to prove affirmative misconduct. Second, we do not decide whether representations made with reckless disregard for their truth are sufficient to support a finding of affirmative misconduct. We hold only that affirmative misconduct is something more than merely negligent conduct." Id. at 1350 n.12.

misrepresentation was reasonable. The element of reasonable reliance must be analyzed "in light of the principle that all citizens, especially citizens dealing with the government, are presumed to know the law." Id. at 1349 (citing cases). A party's reliance on a government employee's misstatement about a particular law or regulation will rarely be reasonable if a clear statute or regulation provided otherwise. Id.

In this case, § 301.7425-3(a) states, "notice . . . shall be given in writing to the to the Internal Revenue Service (IRS) official, office and address specified in IRS Publication 786, 'Instructions for Preparing a Notice of Nonjudicial Sale of Property and Application for Consent to Sale,' or any successor publication. The relevant IRS publications may be downloaded from the IRS Internet site at http://www.irs.gov." Publication 786, under a section that states "**Where to Submit Your Notice or Application**," instructs the reader to "Use **Publication 4325**, Technical Services Advisory Group Addresses, to determine where to mail your request." IRS Pub. 786 (Rev. 1-2006) (emphasis in original). Publication 4325 provides the correct Poydras Street address for tax payers residing in Mississippi. IRS Pub. 4235 (Rev. 1-2006). This information was readily available. Under these circumstances, Smith has failed to establish that it was reasonable to rely on incorrect information from an IRS agent he did not even speak with directly. Accordingly, the Court will deny Smith's estoppel claim.

In sum, because the notice of sale was sent to the wrong IRS office and by an improper method, the notice of the nonjudicial foreclosure provided by Smith was ineffective; therefore, under section 7425(b), the sale was made subject to and without disturbing the United States' tax liens. Defendant United States Motion for Summary Judgment is GRANTED as to this issue. Defendant Smith's and Plaintiff Colom's Motions for Summary Judgment are DENIED as to this

issue.

## II.    Amount of Colom's Lien

There is no dispute that Union Planters held a perfected security interest in the amount of approximately $350,000 prior to the United States recording notice of its tax liens. When Union Planters assigned[4] its deed of trust to Colom, he executed a promissory note in favor of Union Planters in the amount of $296,750.00. To date, Colom has paid $69,416.77 on the note. The United States now asserts that, pursuant to 26 U.S.C. § 6323(h)(1), Colom's security interest is entitled to priority relative to the tax liens only to the extent he has actually parted with money to acquire the interest, rather than the amount of money he promised to pay to acquire the interest or any larger amounts that may be due under the terms of the underlying loans. Section 6323(h)(1) defines the term "security interest," as follows:

> **Security interest.--**The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

"Money or money's worth" is not defined in the statute, but is defined by treasury regulations as:

> **(3) Money or money's worth.** For purposes of this paragraph, the term money or money's worth includes money, a security (as defined in paragraph (d) of this section), tangible or intangible property, services, and other consideration reducible

---

[4]The assignment reads "For and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, cash in hand paid, the undersigned Union Planters Bank, NA, Beneficiary, under that certain Deed of Trust from Maurice Webber to Beneficiary, dated January 25, 2001, and recorded in Trust Deed Book 1357 at Page 22 in the office of the Chancery Clerk of Lowndes County, Mississippi, does hearby grant, bargain, sell, assign and transfer to Wilbur Colom, without recourse, all of Beneficiary's interest in and to said Deed of Trust, together with the indebtedness secured thereby."

11

> to a money value. . . . A firm commitment to part with money, a security, tangible or intangible property, services, or other consideration reducible to a money value does not, in itself, constitute a consideration in money or money's worth.

26 C.F.R. § 301.6323(h)-1(a)(3) (effective April 4, 2011). The regulations define a "holder of a security interest" as "the person in whose favor there is a security interest." §301.6323(h)-1(a)(4).

Relying on § 6323(h)(1), the United States argues that Colom is entitled to enforce his security interest only "to the extent" he has actually parted with money in satisfaction of the note ($69,416.77), rather than the full $296,750.00 he has promised to pay, nor any larger amount currently due under the underlying loans. Essentially, the United States argues that the security interest held by Union Planters ceased to exist (i.e., lost its priority relative to the federal tax liens) when Union Planters assigned its rights to Colom, to the extent Colom did not part with money for the assignment.

Colom responds that Union Planters merely assigned its rights to an already existing security interest and Colom "stands in the shoes of Union Planters." Mississippi law permits an assignment of contractual rights. Assigned contractual rights may be enforced by the assignee who "stands in the shoes of the assignor" and takes no rights other those which the assignor possessed. See Great So. Nat. Bank v. McCullough Envtl. Servs., Inc., 595 So. 2d 1282, 1287 (Miss. 1992); Ford v. White, 495 So. 2d 494, 497 (Miss. 1986).

The cases cited by the United States provide no applicable analysis of this situation. See United States v. 3809 Crain Ltd. P'ship, 884 F.2d 138, 142-44 (4th Cir. 1989); Merrill Lynch Credit Corp. v. Lenz, 2010 WL 4553625 (S.D. Fla. Nov. 3, 2010); Hovis v. Gilliam, 2009 WL 1465352 (Bankr. D.S.C. Mar. 24, 2009), aff'd by Gilliam v. Hovis, 2010 WL 1345604 (D.S.C. Mar. 31, 2010). These cases simply stand for the proposition that to create a security interest under §

6323(h)(1), the holder of a security interest must have parted with money or money's worth.

The United States District Court for the Southern District of Mississippi addressed an identical argument in Mountaineer Investments LLC v. United States, 2009 WL 3747205 (S.D. Miss. Nov. 4, 2009). In Mountaineer, the plaintiff purchased notes secured by properties also encumbered with junior federal tax liens. Id. at *1. The United States argued that the plaintiff, "[was] entitled to enforce [its security interest] against the United States' tax liens only to the extent of the amount that Plaintiff paid to acquire those interests, and not the amounts that are currently due under the terms of the underlying loans." Id. at *4. In declining to adopt the United States' construction of § 6323(h)(1), the court reasoned:

> Here, the Government focuses on the phrase "to the extent," suggesting that this dictates the extent of a security interest. However, the statute must be read as a whole because "a word is known by the company it keeps (the doctrine of *noscitur a sociis*). This rule . . . avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 574, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995) (citations and quotations omitted). Viewed in context, § 6323(h)(1) clearly addresses the requisites for creating a security interest at a given time, stating that such will exist "at any time . . . to the extent that, *at such time*, the holder has parted with money." 26 U.S.C. § 6323(h)(1) (emphasis in original).

Id. at *5. The court concluded that the United States' construction was not supported by the plain language of the statute, and, "[h]ad Congress intended to limit the scope of the security interest via § 6323(h)(1), it could have easily and plainly done so. It did not." Id.

The Court finds the reasoning in Mountaineer persuasive and agrees that the United States' proposed application of the statute is not supported by its plain language. The legislative history of § 6323(h)(1) further undermines the United States' position. Regarding § 6323(h)(1), the House Committee Reports states:

13

> It is intended that if a Federal tax lien is invalid against an initial holder of a security interest, it also is to be invalid to the same extent against any person who succeeds to the interest of the initial holder, whether by purchase or otherwise.
>
> A security interest is considered as arising when the following conditions are met:
> (1) the property is in existence and the interest is protected under local law against a subsequent judgment lien arising out of an unsecured obligation; and
> (2) to the extent the holder has parted with money or money's worth.

H.R. Rep. No. 89-1884, 1966-2 C.B. 815 (footnotes omitted). The report of the Senate Finance Committee contains an identical statement regarding § 6323(h)(1). S. Rep. No. 89-1708, 1966-2 C.B. 876. The United States has offered no other basis for this portion of their case; therefore, the United States Motion for Summary Judgment is DENIED as to this issue.

### III. Declaratory Relief Beyond that Authorized by 28 U.S.C. § 2410(a) and Monetary Damages

Defendant United States additionally seeks summary judgment as to any claims of Colom to the extent he seeks declaratory relief beyond quieting title to the property, or to the extent he seeks monetary damages against the United States. Colom concedes his only claim against the United States is to quiet title to the property; therefore, the United States Motion for Summary Judgment is GRANTED as to this issue.

## CONCLUSION

For the foregoing reasons:

(1) Defendant United States' Motion for Summary Judgment [77] is GRANTED in part and DENIED in part.

(2) Defendant Smith's Motion for Partial Summary Judgment [82] is DENIED.

(3) Plaintiff Colom's Motion for Summary Judgment [85] is DENIED.

SO ORDERED on this, the 1st day of August, 2011

                                                            /s/ Sharion Aycock  
                                                            **UNITED STATES DISTRICT JUDGE**